UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:06-CV-69-R

IN RE:

LWD, INC.
LWD LAND COMPANY, INC., LWD EQUIPMENT, INC.,
LWD TRUCKING, INC., LWD SANITARY LANDFILL, INC.,
and GENERAL ENVIRONMENTAL SERVICES, INC.

K& B CAPITAL, LLC                                                    APPELLANT

v.

OFFICIAL UNSECURED CREDITOR'S COMMITTEE                    APPELLEE


**MEMORANDUM OPINION**

This matter is before the Court on appeal from the United States Bankruptcy Court for

the Western District of Kentucky.  K & B Capital, LLC, ("K & B") appeals the Bankruptcy

Court's March 13, 2006, Order denying K & B Capital's Motion to Vacate the Bankruptcy

Court's Order of March 25, 2004.  (Docket # 4).  The Appellee, Official Unsecured Creditor's

Committee of LWD (the "Creditors"), filed a Brief in response.  (Docket # 6).  K & B filed a

Reply Brief. (Docket # 8).  The matter is now ripe for adjudication.  The Court now AFFIRMS

the Bankruptcy Court's Order denying K & B's Motion to Vacate the Supplemental Order to the

Order of Sale.


**BACKGROUND**

This case arises from the joint bankruptcy proceedings of LWD, Inc.; LWD Land

Company, Inc.; LWD Equipment, Inc.; LWD Trucking, Inc.; and LWD Sanitary Landfill, Inc. (collectively "LWD") and General Environmental Services.  The bankruptcy proceedings of LWD began as involuntary proceedings under Chapter 7, but were converted to voluntary proceedings under Chapter 11.  At that time, General Environmental Services voluntarily began bankruptcy proceedings, which were joined with LWD's proceedings.  A bankruptcy auction was to be held on March 9, 2004.

Prior to the auction, the Bankruptcy Court ordered that the Debtors prepare a detailed listing of their assets to be auctioned.  The lists were required so that bidders at the auction might properly value the assets for which they were bidding.  The Debtors prepared five lists, specifically noting tangible and intangible financial assets.  While the lists seemed exhaustive, none of the lists referred to the auction of Chapter 5 claims, or avoidance actions.  K & B, owned by the people that owned LWD, was given notice of the filing of these lists of assets and made some objections to the accuracy of the lists.  Notably, K & B did not object to the absence of Chapter 5 claims on the lists.

K & B won the March 9, 2004, auction of the Debtors' assets with a bid of $2,555,000. Subsequently, the Bankruptcy Court held several hearings regarding the details of the sale and K & B's payment of its bid.  On March 23, 2004, while hearings on the details of the sale were still in progress and payment was incomplete, the Bankruptcy Court issued an Order authorizing the sale of the Debtors' assets to K & B.  The Order used broad language authorizing the conveyance pursuant to the auction of all the Debtors' assets and claims, tangible and intangible, free from liens.

The Creditors immediately sought a hearing to clarify that this broad language did not

2

purport to allow the sale of the Chapter 5 claims. K & B's current counsel was present at this hearing.[1] The Bankruptcy Court stated that the Chapter 5 claims were never intended to be transferred at the auction, and it was suggested that the claims, in fact, could not legally be sold. No parties present objected to this characterization of the limited meaning of the Order Authorizing Sale taken in context with the lists of assets for auction provided by the Debtors. While the Bankruptcy Court did not initially believe that a Supplemental Order was necessary to memorialize this clarification, the Creditors' counsel suggested that one be entered and drafted a proposed Supplemental Order. None of the parties present objected to this course of action.

On March 24, 2004, the following day, another telephonic conference was held. The Bankruptcy Court's transcript again shows that K & B's counsel was present. In fact, K & B's counsel participated in this call, indicating that it would complete payment following the call. The Bankruptcy Court again discussed the entry of a Supplemental Order clarifying that Chapter 5 claims were not authorized to be transferred under its March 23, 2004, Order. Counsel for the Creditors indicated that he had circulated to the parties a proposed order to clarify. Counsel for K & B did not object, ask for an additional copy of the proposed Order, or otherwise allege that they had not received it. The Bankruptcy Court agreed to enter a clarifying Supplemental Order,

---

[1]K & B now claims that its counsel was not present for this telephonic hearing and had no notice that the Bankruptcy Court or other parties did not intend the sale of the Chapter 5 claims. The Bankruptcy Court's transcript of this call, however, clearly shows the presence of K & B's counsel. It seems this and several other easily verifiable facts have been misrepresented by K & B in this appeal.

if there were no objections.  No objections were made at that time.  The Bankruptcy Court also ordered the Debtor's and K & B to provide an accounting of the Debtors' revenues and expenditures between January 1, 2004, and March 31, 2004.[2]  The only plausible use for this Accounting was to allow the Creditors to analyze which Chapter 5 claims they might assert.  K & B, however, never alleged that the Order requiring this Accounting was irrelevant or fruitless because the Chapter 5 claims had been transferred to K & B.

On March 25, 2004, the remainder of K & B's payment of the bid price was completed.[3] That day, the Bankruptcy Court also entered the Supplemental Order clarifying that the Order Authorizing Sale did not authorize the transfer of the Chapter 5 claims, admitting that the original Order Authorizing Sale "indicated that all chose in action of the debtors were conveyed to the approved purchaser."  The Supplemental Sale Order also states that "it was not the intention of the Court, the debtors or the Creditors' Committee to convey to the successful purchaser of [sic] the debtors' Chapter 5 causes of actions, claims and rights which are legal rights remaining with the debtors."  Therefore, the Bankruptcy Court held that "[t]he debtors' assets which are conveyed to the successful purchaser shall not include any of the debtors' claims, rights and causes of action set forth in Chapter 5 of the Bankruptcy Code (11 USC § 501

---

[2]K & B partially complied with this Order by providing an accounting of the Debtors' revenues and expenditures up to the sale date of March 9, 2004, filed on April 15, 2004.

[3]An unsuccessful bidder for the Debtors' assets objected to K & B's late payment, as well as the method of payment.  At the auction, only cash payment had been authorized, but K & B relied on an uncertified check to transfer the balance of their bid payment.

et. seq. [sic]).  These Chapter 5 claims, rights and interests shall remain with the debtors for further actions as the debtors deem appropriate."

On June 16, 2004, the Creditors sought to enforce the Supplemental Order, claiming that K & B was improperly receiving insurance assets from a debtor.  The Creditors claimed that nearly $500,000 in insurance claims were transferred from the debtors to K & B, but were not listed on the accounting of revenues and expenditures ordered by the Bankruptcy Court.  The Creditors had standing to challenge the transfer of the insurance money because it was susceptible to Chapter 5 claims.  The Bankruptcy Court heard the Motion to Enforce as an adversary proceeding.  During the proceedings, K & B never objected that the Supplemental Order could not be enforced because it was void, nor did it object that it possessed the Chapter 5 claims.  K & B never alleged that the Supplemental Order was improperly executed or was entered without due process to all the parties.  Instead, K & B vigorously defended the adversary proceeding on its merits.  The Bankruptcy Court found in favor of the Creditors on February 22, 2005.  K & B then filed a Motion for Reconsideration of the Bankruptcy Court's judgment allowing enforcement, but again did not object to the propriety of the underlying Supplemental Order on procedural or due process grounds.  K & B's Motion to Reconsider was denied.  K & B has now appealed the Bankruptcy Court's ruling on the Motion for Reconsideration of the Enforcement Judgment in a separate appeal before this Court.

After changing counsel, K & B sought to challenge the Supplemental Order entered March 24, 2004, for the first time on January 25, 2006.  The time had passed for K & B to seek reconsideration or appeal of the Supplemental Order; its only recourse was filing a Motion to

Vacate the Order nearly two years after its entry. K & B claimed that its counsel at the time had not received notice that the Supplemental Order would be entered and had believed that the Chapter 5 claims were transferred at the auction. In support of this claim, K & B presents the affidavit of Mr. Kattula, the owner of K & B, claiming that he believed the Chapter 5 claims were transferred. K & B provides no support for its claim that the Bankruptcy Court intended to authorize the transfer of the Chapter 5 claims (which were not listed for sale at the auction) or that the Chapter 5 claims could indeed be transferred. K & B also submits the affidavits of its previous attorneys, Mssrs. Farmer and Stout, who represented it at the time the Supplemental Order was issued. In their affidavits, the attorneys state that they "do not recall" and "have no recollection of" discussing or reviewing the Supplemental Order before its issue.

K & B's legal theories in filing the Motions to Vacate were that the Supplemental Order was void as a matter of law because (1) K & B's due process rights had been violated by the entry of the Order when it had no notice of the Order through a filed Motion and no opportunity to be heard in opposition and (2) that the Bankruptcy Court only intended to enter the Order if all parties had "signed it," which K & B had not. Furthermore, K & B claimed that denial of its Motion to Vacate because K & B did have notice of the Supplemental Order would be tantamount to signing a malpractice complaint against Mssrs. Farmer and Stout for failing to respond to the entry of the Order. K & B did not object to the propriety of the form of the Supplemental Order, later argued to be entered by the Bankruptcy Court pursuant to Federal Rule of Civil Procedure 60(a) as applied to Bankruptcy Court through Federal Rule of Bankruptcy Procedure 9024.

6

The Creditors responded that the Supplemental Order was properly entered.  They stated that Motions to Vacate must be brought within a reasonable time in light of the circumstances surrounding the case, and that K & B's Motion, two years after the entry of the Order and after significant litigation had ensued to enforce the Order, was not timely.  The Creditors also stated that the Chapter 5 claims were, indeed, not saleable under applicable Sixth Circuit law; thus, K & B could not have claimed rights in the Chapter 5 claims.  Under the Creditors' analysis of the affidavits presented by K & B, none of the affiants allege that the Bankruptcy Court, Debtors, or Creditors intended to transfer the Chapter 5 claims at the time of the sale; therefore, the Supplemental Order was not a change, but a mere clarification.  The Creditors also argued that the Bankruptcy Court had the ability to enter an Order *sua sponte* to clarify the original Order Authorizing Sale, regardless of whether the parties signed the Supplemental Order or a Motion was filed before the date of final sale.  Additionally, the Creditors noted that the record showed that K & B *did* have notice that the Creditor's urged the entry of a Supplemental Order and the opportunity to respond during the telephonic conferences of March 24 and 25, 2004; K & B tacitly agreed to the entry of the Order by failing to object or respond to the discussion of the Order in any way.  The Creditors suggested that K & B's objection to the procedure of entering the Supplemental Order without the filing of a motion requesting the Order was disingenuous; at this late date, the Creditors could not cure any procedural deficiencies and provide the Court with the notice and opportunity to clarify its original Order Authorizing Sale.  The Creditors also theorized that K & B was motivated to file its Motion to Vacate the Supplemental Order at such a late date with the sole purpose of collaterally attacking the Bankruptcy Court's judgement

enforcing the Supplemental Order on February 22, 2005.

The Bankruptcy Court denied the Motion to Vacate on March 13, 2006.   The Bankruptcy Court ruled that it had the authority under Federal Rule of Bankruptcy Procedure 9024 to correct the Order Authorizing Sale to conform it to the clear intent of the Court and parties evidenced by the lists of Debtors' assets for auction.[4]  Any lack of clarity was merely a clerical error, corrected in the Supplemental Order, and not evidence that the Bankruptcy Court "changed its mind" after the sale was complete. The Bankruptcy Court noted that K & B had notice and opportunities to be heard regarding the validity and propriety of the Supplemental Order at (1) the March 23, 2004, telephonic conference; (2) the March 24, 2004, telephonic conference; (3) after the entry of the Supplemental Order; (4) after the entry of the Order for an Accounting of Funds; (5) at the time K & B partially complied with the Order for an Accounting of Funds; (6) at the time the Creditors moved to enforce the Supplemental Order; (7) at the time K & B moved for reconsideration of the Bankruptcy Court's enforcement judgment; and (8) at the time K & B appealed the Bankruptcy Court's enforcement judgment.  K & B did not object or even question the validity of the Supplemental Order at that time.  Although no new evidence has developed in support of K & B's arguments against the Supplemental Order and they present no reason for their delay, K & B first claimed the Supplemental Order was void two years after its entry.   The Bankruptcy Court notes, "[i]f K & B truly did believe that it had purchased the Chapter 5 Claims at the 363 Sale, it would not have spent such considerable resources defending against the Adversary Proceeding all the way through trial and beyond.  Rather it would have simply filed a

---

[4]As the Bankruptcy Court noted, adding Chapter 5 claims to the items auctioned would be unfair to other bidders, who did not calculate the value of those claims in their bid prices.

8

motion to dismiss the Adversary Proceeding at the earliest opportunity, months before the matter came to fruition."

The Bankruptcy Court ruled that it was entitled to enter the Supplemental Order *sua sponte,* without notice, and did not seriously expect all parties to sign it.[5]  Furthermore, K & B's tacit acknowledgment of the Supplemental Order through the provision of an accounting and participation in the enforcement proceedings create estoppel concerns regarding its present argument.  The Bankruptcy Court also found that K & B had no reasonable belief that it ever purchased the Chapter 5 claims and that K & B's due process was not violated because they had notice of the pending Supplemental Order and an opportunity to voice their objections, either at the telephonic conferences or through a Motion to Reconsider.  The Bankruptcy Court declined to rule on whether Chapter 5 claims were saleable, but noted that they appear to be nontransferable.  The Bankruptcy Court also commented on the potentially unethical conduct of K & B's attorneys in using future malpractice litigation as a threat, but refrained from issuing sanctions.

In the present action, K & B appealed the Bankruptcy Court's Denial of its Motion to Vacate the Supplemental Order.  The parties arguments essentially echo those argued before the Bankruptcy Court.  However, K & B adds the new argument that the Bankruptcy Court

---

[5] When discussing the Supplemental Order, the Bankruptcy Court joked that it would sign anything, "[a]s long as everybody has their name on it...."  No attorneys objected at the time to the Supplemental Order.  This Court agrees that, in making this statement, the Bankruptcy Court did not actually require physical signatures of all parties, but casually remarked that all parties were in agreement on the entry of the Supplemental Order.

improperly entered the Supplemental Order under Federal Rule of Civil Procedure 60(a).  While

the Bankruptcy Court made clear it entered the Supplemental Order under Federal Rule of

Bankruptcy Procedure 9024, through the bankruptcy procedural corollary to Federal Rule of

Civil Procedure 60(a), K & B maintains that the Supplemental Order affected K & B's

substantive rights after the sale was complete and was required to be entered under Federal Rule

of Civil Procedure 60(b).  This argument was not brought before the Bankruptcy Court in the

Motion to Vacate which is now appealed.  Regardless, the Creditor's respond to the argument,

stating that a correction to make an Order of Sale comply with the course of proceedings and

intent of the Court is valid under Federal Rule of Civil Procedure 60(a).

## STANDARD

Bankruptcy Rule 8013 sets forth the standard of review of a bankruptcy courts'

judgment, order, or decree.  A bankruptcy court's findings of fact may not be set aside unless

clearly erroneous, and a bankruptcy court's legal conclusions are reviewed *de novo*.  *Budrow v.

Montedonico*, 35 Fed. Appx. 213, 215 (6th Cir. 2002); *Jordan v. Michigan Conference of

Teamsters Welfare Fund*, 207 F.3d 854, 858 (6th Cir. 2000); *Stephens Indus., Inc. v. McClung*,

789 F.2d 386, 389 (6th Cir. 1986); *Howard v. Allard*, 122 B.R. 696, 698 (W.D. Ky. 1991).[6]

---

[6]K & B disagrees with the Bankruptcy Court's findings that K & B's attorneys were present at

hearings regarding the Supplemental Order and therefore had notice of it.  The Court finds that

the Bankruptcy Court's transcript of those meetings shows nearly incontrovertible evidence that

K & B's representatives were indeed present and did have notice and opportunity to object to the

Supplemental Order before its entry.  Therefore, the Court holds that the Bankruptcy Court's

Whether the Bankruptcy Court had jurisdiction to enter an order is a question of law which must be reviewed *de novo*. *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003).

Decisions made pursuant to Federal Rule of Civil Procedure 60(a), made applicable to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9024, are reviewed for an abuse of discretion. *Whitaker v. Associated Credit Svcs., Inc.*, 946 F.2d 122, 124 (6th Cir. 1991). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995); *Amernational Indus. Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970, 975 (6th Cir. 1991). An abuse of discretion occurs only when a bankruptcy court "relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Mapother & Mapother v. Cooper (In re Downs)*, 103 F.3d 472, 481 (W.D. Ky. 1996). *See also Nischwitz v. Miskovic (In re Airspect Air, Inc.)*, 385 F.3d 915, 920 (6th Cir. 2004). The refusal to vacate a void order is a finding that there was notice can not be called "clearly erroneous."

Counsel for makes several arguments which are at odds with the Bankruptcy Record, namely that: K & B were not on notice of the entry of the Supplemental Order despite their presence at certain hearings; and that K & B did not have notice of the Supplemental Sale Order after its entry although it was in the Bankruptcy Record; that K & B was unaware of the Supplemental Order and could not challenge it, though litigated the enforcement of that Order. These characterizations of the facts are frivolous at best, and possibly amount to something worse. At any rate, the Court does not regard the Bankruptcy Court's factual findings, supported by the record, as "clearly erroneous."

11

*per se* abuse of discretion.  *See Burrell v. Henderson*, 434 F.3d 826, 831 (6th Cir. 2006); *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001); *Carter v. Fenner*, 136 F.2d 1000, 1006 (5th Cir. 1998); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir. 1996); *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1345 (5th Cir. 1992).


## ANALYSIS

### I.     Timeliness of K & B's Motion to Vacate

K & B's Motion to Vacate the Supplemental Order was brought pursuant to Federal Rule of Civil Procedure 60(b)(4).  In general, Motions to Vacate an order must be made within a "reasonable time."  Fed. R. Civ. P. 60(b)(4).  Whether a Motion was brought within a "reasonable time" "ordinarily depends on the facts of a given case including the length and circumstances of the delay, the prejudice to the opposing party by reason of the delay, and the circumstances compelling equitable relief."  *Olle v. The Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990).  *See also, e.g., The Farm Credit Bank of Baltimore v. Goitia*, 316 F.3d 62, 66 (1st Cir. 2003) (holding that a six and a half year delay, where "the delay did not stem from ignorance of what had transpired" was unreasonable); *Ohio Cas. Ins. Co. v. Pulliam*, No 96-6522, 1999 U.S. App. LEXIS 14136 at *9-10 (6th Cir. June 23, 1999) (holding that three years was an unreasonably delay to set aside a jury verdict pursuant to Rule 60(b)(4) where there was no explanation for the delay other than settlement tactics); *Fed. Deposit Ins. Corp. v. Brenesell (In re Brenesell)*, 109 B.R. 412, 418-19 (Bankr. D. Hawaii 1989) (holding that a three year delay

12

where the movant was aware of the order was unreasonable); *In re Little*, 91 B.R. 451, 454 (Bankr. S.D. Ohio 1988) (denying the movants' attempt to disavow a settlement two years later on the ground of mistake of fact at the time of the settlement).   The Sixth Circuit has been especially quick to find an unreasonable delay where the movant knew of the order they now object to, but failed to take proper steps to challenge it at the time it was entered.  *Steinhoff v. Harris*, 698 F.2d 270, 273 (6th Cir. 1983) (holding that 77 days was unreasonable delay when the movant failed to take objection to a magistrate's report before judgment was entered on it). "A party will not be relieved of the consequences of making an informed choice when it subsequently develops that the choice was unfortunate."  *Id.* at 275.

In this case, K & B was well aware of the Supplemental Order before and after its entry. K & B attended meetings discussing the entry of the Supplemental Order and likely obtained a copy of the draft of the Supplemental Order before its entry.[7]  K & B had notice of the Supplemental Order after it was entered, because it became part of the record of the case.  K & B had notice of the purport of the Supplemental Order when the Order for Accounting was entered and when they complied with that Order.  K & B had further notice of the content of the Supplemental Order as they litigated the Enforcement Action concerning the Chapter 5 claims. In fact, for nearly two years, K & B acted in accordance with the Supplemental Order, never

_____

[7]K & B now objects that it was not present at those hearings and did not receive a copy of the draft.  The record shows that counsel for K & B was indeed present at the hearings.  While the Court has no way of knowing that counsel for K & B received a copy of the draft, it is telling that the Creditors' counsel declared at a hearing that a copies of the draft had been circulated and that K & B did not contradict this statement.

once challenging its validity.  Furthermore, K & B expended much time and resources litigating the Enforcement Action, which would be money and time wasted if K & B truly believed the Supplemental Order to be invalid.  K & B did not challenge the Supplemental Order through the traditional channels of a motion for reconsideration or an appeal.  K & B states no reason for its delay in bringing the Motion to Vacate.  Additionally, K & B's immediate action would have enabled the Creditors to provide them the notice and motion process they complain was absent. At this late date, when the time has passed to remedy any error in the procedural history of the Supplemental Order, K & B seeks to void the Supplemental Order for a failure of process.  The delay is certainly prejudicial to the Creditors.[8]  The Creditors also theorize that K & B's true motivation in bringing the Motion to Vacate is to collaterally attack proceedings allowing enforcement of the Supplemental Order; if so, this rationale certainly does not validate the delay. The Court holds that the Motion to Vacate was not brought within a reasonable time.

K & B argues that there is no timeliness requirement for motions brought pursuant to Rule 60(b)(4) seeking to vacate a void order.  *See, e.g., In re Ruehle*, 307 B.R. 28, 36-37 (B.A.P. 6th Cir. 2004); *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 142-43 (5th Cir. 1996); *United States v. Studak*, No. 32X 5571, 1994 U.S. Dist. LEXIS 12959 at *10 (E.D. Mich. Aug. 19, 1998).  In *Ruehle*, the Sixth Circuit held that "[t]here are no time limits on vacating an order that is void," not even reasonable time constraints.  The Sixth Circuit reasoned that there is no policy

---

[8]K & B argue that a ruling granting the Motion to Vacate would only show that the Bankruptcy Court improperly entered the Supplemental Order and that, though it would not work in favor of the Creditors, it would not unduly prejudice them either.  The Court finds the unexplained *delay,* which robs the Creditors of any opportunity to cure procedural defects, is prejudicial.

in preserving and finalizing a judgment which is void from the moment it is entered. *Ruehle*,

307 B.R. at 36-37.  Thus, K & B must succeed in showing that the Supplemental Order is void to

prevail in its Motion to Vacate.  Other arguments for vacation are time-barred.

## II.       Proper Procedure for Entering the Supplemental Order

K & B argues that Supplemental Order is void because the Bankruptcy Court was not

entitled to enter it under Federal Rule of Bankruptcy Procedure 9024, which applies Federal

Rule of Civil Procedure 60(a) to bankruptcy proceedings.  K & B alleges that the Supplemental

Order amended the Order Authorizing Sale in a way affecting K & B's substantial rights.[9]  The

Creditors replied that the Bankruptcy Court correctly held that the Supplemental Order merely

corrected a potential ambiguity in the Order Authorizing Sale to conform with the intention of

the Court and parties throughout the sale process; this mere correction did not alter the agreed

upon rights of K & B.  The Court reviews this matter of procedural law *de novo* and finds that

the Bankruptcy Court properly issued the Supplemental Order as a correction under Federal Rule

of Bankruptcy Procedure 9024.

### A.       60(a) Analysis

As the Bankruptcy Court correctly stated, a Court may enter an Order unilaterally

correcting clerical mistakes, such as "blunders in execution" and "mistakes or oversights that

cause the judgment to fail to reflect what was intended at the time of trial."  *Pruzinsky v. Gianetti*

---

[9]K & B did not make this argument in its original Motion to Vacate.  Although the argument was

not initially argued, it was apparently discussed at oral argument before the Bankruptcy Court

and was ruled upon.

15

*(In re Walter)*, 285 F.3d 434, 440 (6th Cir. 2002) (quoting *Blanton v. Anzalone*, 813 F.2d 1574,

1577 (9th Cir. 1987) and *Vaughter v. E. Air Lines, Inc.*, 817 F.2d 685, 689 (11th Cir. 1987));

Fed. R. Civ. P. 60(a).

> The basic purpose of the rule is to authorize the court to correct
> errors that are mechanical in nature that arise from oversight or
> omission.  Clerical mistake include those made by judges as well as
> administrative employees.  The rule does not, however, authorize
> the court to revisit is legal analysis or otherwise correct and error of
> substantive judgment.
> *Id.* (internal citations omitted).

A court may not correct an Order simply because it "*changes its mind*, either because of a legal

or factual mistake in making its original determination, or because on second thought it has

decided to exercise its discretion in a manner different from the way it was exercised in the

original determination.  *Id.* (quoting *Blanton*, 813 F.2d at 1577 n.2) (emphasis in original).

"[W]hen a court has undertaken to 'make the judgment or record speak the truth' rather than

'something other than what was originally pronounced' the court has not abused its discretion in

granting relief under Rule 60(a)."  *Id.* (quoting *Vaughter*, 817 F.2d at 689).  A bankruptcy court

is "entitled to modify its order under Rule 60(a) if: (i) the error was mechanical in nature rather

than the result of a deliberate choice, and (ii) the modification corrects the [original] order such

that it reflect what was the intent of the bankruptcy court at the time of the hearing."  *Id.*  The

Sixth Circuit has held that intent of the court ruling on the Order, at the time of ruling, controls

whether the modification corrects a mere clerical error.  *See id.* at 442.  Here, the Bankruptcy

Court has unambiguously declared numerous times that it did not intend to include the Chapter 5

claims in its Order Authorizing Sale.  The absence of the Chapter 5 claims from the lists of

16

auctioned assets further support that this was the Bankruptcy Court's intent.  It appears that the Supplemental Order could properly be entered under Rule 60(a).

**B.      60 (b) Analysis**

K & B contends that the Supplemental Order can only be corrected under Federal Rule of Civil Procedure 60(b) because it affects K & B's "substantive rights."  *Olle*, 910 F.2d at 363.  When a court must hold a hearing to determine whether the original order was erroneous, the Sixth Circuit has held that the error is not merely clerical and that Rule 60(a) is an inappropriate venue for amendment.  *Id.* at 364.   An Order entered pursuant to Rule 60(b) cannot be entered *sua sponte* and must originate with a motion filed by a party to the Court.  Fed. R. Civ. P. 60(b).  Therefore, if the Supplemental Order could only be filed under Rule 60(b), it was improperly entered without a motion, and the Supplemental Order is void.

**1.      Hearing**

K & B claims that, because the parties discussed the issue of the Supplemental Order at hearings, the Bankruptcy Court must have intended to correct something more than a clerical error, making issuance inappropriate under Rule 60(a) and proper under Rule 60(b).  A closer reading of the hearing transcripts indicates that the hearings were held to discuss many matters, not only whether the Supplemental Order should be entered.  Also, the hearing transcripts indicate that the Bankruptcy Court did not discuss *whether* the Chapter 5 claims should be transferred to K & B; it had already concluded so before the Order Authorizing Sale was entered.  It appears the Bankruptcy Court had concluded that the Chapter 5 claims would not be transferred when they were not included in the list of assets to be auctioned.  In the hearings, the

17

Bankruptcy Court only discussed whether an order confirming this fact was necessary, not the underlying disposition of the Chapter 5 claims.  Thus, the case is distinguishable from the *Olle* case championed by K & B, where the Sixth Circuit held that the Order must be entered under Rule 60(b) because the Court had to hold a hearing to determine the substantive matters underlying the corrective order.  *Olle*, 910 F.2d 357.  This Court holds that the discussion of the procedural issues of the entry of the Supplemental Order at a hearing is not determinative that Rule 60(a) was improper procedure.

**2.    Substantive Rights**

K & B also argues that its substantive rights were affected by the entry of the Supplemental Order; in other words, it suggests that prior to the Supplemental Order, it had rights to the Chapter 5 claims which were declared not to be transferred by the Supplemental Order.  In support of this position, K & B only states the language of the Order Authorizing Sale, which K & B claims "unambiguously sells to K & B the Chapter 5 claims."  In fact, the Order Authorizing Sale does not mention the Chapter 5 claims at all, though it does authorize the transfer of the Debtors' "every asset of any type - tangible and intangible...."  While this language, taken out of context, might suggest that the Chapter 5 claims were indeed transferred, the Court holds that K & B could not have had substantive rights to the Chapter 5 claims and could not have reasonably believed that they did.[10]

_____

[10]The Court acknowledges that Mr. Kattula testified in his affidavit that K & B believed the Chapter 5 claims were transferred.  While this may or may not be true, the Court finds that K & B could not have *reasonably* believed the Chapter 5 claims were transferred, and, in any case, did not act as though they believed the Chapter 5 claims were transferred at the time.

18

Under Sixth Circuit law, Chapter 5 claims cannot be transferred.  In *Belding-Hall*, the Sixth Circuit held that any conveyance of avoidance actions, called Chapter 5 claims herein, is void because Chapter 5 claims are nontransferable as a matter of law.  *Belding-Hall Mfg. Co. v. Ferdon Lumber Co.*, 175 F. 335, 340 (6th Cir. 1909).  Other courts have agreed with the Sixth Circuit's conclusion.  *See, e.g., Grass v. Osborn*, 39 F.2d 461, 461 (9th Cir. 1930); *Consol. Pet Foods v. Millard Refrigerated Svcs., Inc. (In re S & D Foods, Inc.*, 110 B.R. 34, 37 (Bankr. D. Colo. 1990); *In re Texas Gen. Petroleum Corp.*, 58 B.R. 357, 358 (Bankr. S.D. Tex. 1986) ("neither a trustee in bankruptcy not a debtor-in-possession can assign, sell, or otherwise transfer, the right to maintain a suit to avoid a preference.  If a trustee or a debtor-in-possession makes such an assignment, the assignment is of no effect."); *United Capital Corp. v. Sapolin Paints, Inc. (In re Sapolin Paints, Inc.)*, 11 B.R. 930, 937 (Bankr. S.D.N.Y. 1981) ("neither a trustee nor a debtor-in-possession, can assign, sell, or otherwise transfer the right to maintain a suit to avoid a preference.").  Therefore, K & B could never have legally obtained rights to the Chapter 5 claims, and K & B's "substantive rights" were not effected by the Bankruptcy Court's Supplemental Order declaring that the rights were not transferred.

The Bankruptcy Court did not consider the matter of whether the Chapter 5 claims were legally transferable, because the parties never attempted to transfer them.  The intent of the Court and parties not to transfer the Chapter 5 claims is clear, since the Chapter 5 claims were not listed with the Debtor's other assets for auction.  K & B clearly agreed with this assessment since it was active in the drafting of the lists, objecting to them for several reasons.  K & B never objected to the absence of the Chapter 5 claims.  When the Creditors sought to clarify that the

19

Chapter 5 claims were not included in the sale, K & B did not object.  Throughout litigation of the Chapter 5 claims, K & B did not object that they were transferred.  Though the Bankruptcy Court may have used broad language in its original Order Authorizing Sale, it is clear in context that it did not intend to transfer the Chapter 5 claims which were not listed as assets for auction and, at any rate, were not transferable.  Since K & B legally did not and could not obtain rights to the Chapter 5 claims, the Supplemental Order declaring that K & B did not have rights to the Chapter 5 claims could not have effected K & B's substantive rights.

K & B has not shown any persuasive reason that Rule 60(b) was the sole venue for the Bankruptcy Court to enter the Supplemental Order.  Indeed, it appears the Rule 60(a) was an appropriate method for the entry of the Supplemental Order.  Therefore, the Court does not find that motion process was required to precede the entry of the Supplemental Order.

### III.    Due Process in Entry of the Supplemental Order

K & B argues that the Supplemental Order should be vacated because it was void for lack of due process in its entry.  "Lack of notice... leading ultimately to lack of due process properly renders a judgment void." *Ruehle*, 307 B.R. at 33 (quoting *In re Chess*, 268 B.R. 150, 155 (Bankr. W.D. Tenn. 2001)).

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties... and afford them an opportunity to present their objections.  The notice must be of such nature as reasonable to convey the required information, and it must afford a reasonable time for those interested to make their appearance."
> *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct.

652, 94 L.Ed. 865 (1950).

K & B claims that it was insufficiently notified of the entry of the Supplemental Order to satisfy due process.  Federal Rule of Civil Procedure 60(a), applicable to the Supplemental Order, suggests that no due process is necessary before entry of an order correcting a clerical error, since the Bankruptcy Court may enter it *sua sponte*.  Regardless, adequate notice was provided in this case.

**A.      Existence of Notice**

As discussed repeatedly in this Opinion, K & B did have notice that the Chapter 5 claims were not to be included in the Order Authorizing Sale.  The lists of assets of the Debtors provided before the auction detailed the items which were available for sale.  K & B reviewed these lists and objected to some items, but, notably, did not object to the absence of Chapter 5 claims on the lists.  Furthermore, clear Sixth Circuit law indicating that Chapter 5 claims are not transferable also put K & B on constructive notice that the claims were not part of the sale at auction.

K & B did have notice that the Bankruptcy Court would enter the Supplemental Order clarifying that the Chapter 5 claims were not authorized for transfer.  K & B objects that its attorneys at the time do not recall being present at the hearings in which the Supplemental Order was discussed.  The Bankruptcy Court's transcripts, however, are more reliable than attorneys' memories of what happened over two years ago.  The transcripts show that K & B had counsel present at both hearings where the Supplemental Order was discussed.  Seemingly,[11] K & B's counsel was in receipt of a draft of the Supplemental Order circulated to the parties before its

---

[11]Because K & B's counsel did not contradict the statement by the Creditors' counsel

entry.  At that time, K & B had the opportunity to oppose the Supplemental Order, request a formal argument on the matter, or file a motion in opposition to the Supplemental Order.  When the Bankruptcy Court stated that all parties agreed on the Supplemental Order, K & B, present at the hearing, did not correct the Court.  The Court agrees with the Bankruptcy Court that K & B did have notice and the opportunity to be heard before the Supplemental Order was entered.

**B.      Adequacy of Notice**

K & B asserts that, even if it did have some notice of the entry of the Supplemental Order, the notice was inadequate and should have been filed in a formal motion.  In support of this argument, K & B cites to *Ruehle*, a case involving the attempted discharge of student loans in a bankruptcy proceeding.  In that case, the debtor provided notice, in the form of a letter, to her student loan lender that she would discharge her student loans through her bankruptcy.  The lender did not review her letter until after the bankruptcy was finalized.  The Court held that, in order to discharge her debt, the debtor was required to file formal legal notice, attached to a summons. The Court reasoned that student loan lenders require a heightened degree of notice because of the large amount of mail they receive; formal notice with a summons assists them in timely prioritizing their mail.  *Ruehle*, 296 B.R. at 164-65.  K & B also cites to *New York Life*, where the Court vacated an order of summary judgment against a party, because that party received no notice whatsoever.

The present case is distinguishable from both *New York Life* and *Ruehle.*  Unlike the movant in *New York Life*, K & B did have notice and an opportunity to be heard at the hearings

where the entry of the Supplemental Order was discussed.  In *Ruehle*, the Court held that the

debtor was held to a heightened standard of notice because it related to the discharge of a debt.

In this case, no heightened standard of notice applied.  Instead, the Federal Rule of Civil

Procedure 60(a) indicates that the Supplemental Order could be entered *sua sponte*, without

notice or argument by the parties.  The Court finds that the Supplemental Order is not void for

lack of due process.  K & B had notice and opportunity to be heard concerning the entry of the

Supplemental Order which was adequate to satisfy due process in the instant circumstances.


**IV.      Consent to the Supplemental Order**

K & B asserts that the Supplemental Order is void because the Bankruptcy Court orally

required that all the parties sign it in consent, and K & B neither signed nor consented to the

Supplemental Order.  As stated above, the Court contextually interprets the Bankruptcy Court's

comment that it would sign anything, "[a]s long as everybody has their name on it" as a

somewhat joking remark.  At best, the remark might have been intended to elicit any objections

to the entry of the Supplemental Order.  No one, including K & B, stated any objection at that

time.  K & B declared that they could not object because they did not have *actual* notice and

could not have *consciously* consented to the entry of the Supplemental Order.  Considering that

counsel for K & B was present throughout the discussion, the Court cannot find that K & B was

without notice.[12]  Furthermore, though K & B did not consent orally or in writing to the entry of

---

[12]In a similar argument, K & B states that it did not have notice of the Supplemental Order *after
it was entered*.  Therefore, K & B argues it was unable to file a Motion for Reconsideration or
Appeal.  The Supplemental Order was part of the Bankruptcy Court record at that time.  It was

the Supplemental Order, its silence and failure to object to an Order of which it was aware can certainly be taken as tacit consent.

The Court is also not convinced that the Bankruptcy Court was required to obtain K & B's consent before entering the Supplemental Order.  As stated in this Opinion, the Bankruptcy Court was entitled to enter the Supplemental Order to correct *sua sponte*, without consent of the parties.  The Supplemental Order did not alter the disposition of the Debtor's assets since the Chapter 5 claims could not and were not intended to be transferred.  Therefore, the Supplemental Order is not void for want of K & B's written consent.

## CONCLUSION

For the above reasons, the Court AFFIRMS the Bankruptcy Court's Denial of K & B's Motion to Vacate the Supplemental Order.  An appropriate Order shall follow.

---

consistent with the Order for an Accounting which K & B obeyed.  For nearly two years, K & B conducted itself in accordance the validity of Supplemental Order, including litigation of the enforcement of the Order.  The Court finds this compellingly convincing evidence of notice and must conclude that K & B did, in fact, have actual notice of the Supplemental Order.

24